Jessica B. FEAZELL,
Plaintiff-Appellant,

v.

TROPICANA PRODUCTS, INC.
Defendant-Appellee.

No. 86–3314.

United States Court of Appeals,
Eleventh Circuit.

June 22, 1987.

Robert F. McKee, Tampa, Fla., for plaintiff-appellant.

Steven L. Brannock, Holland & Knight, Tampa, Fla., for defendant-appellee.

Before GODBOLD and HILL, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

GODBOLD, Circuit Judge:

Jessica B. Feazell, a female employee of Tropicana Products, Inc., filed suit against Tropicana alleging that it violated the Equal Pay Act of 1963, § 6(d)(1) of the Fair Labor Standards Act, 29 U.S.C. § 206(d)(1) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by willfully discriminating against her on the basis of her sex with regard to her compensation. Feazell's claims under the Equal Pay Act were tried to a jury, and the district court heard the claims under Title VII. Both the jury and the district court found for the defendant, and judgment was entered in favor of Tropicana on all claims.

With regard to the Equal Pay Act claims, the jury found that Feazell's job required substantially equal skill, effort, and responsibility, and was performed under similar working conditions as the work performed by Donald Brittain, Charles Donaldson, and "Harold Mussett" [1] but that the salaries of the employees were based on factors other than sex. The jury also rendered an advisory verdict finding that Tropicana did not intentionally discriminate against Feazell on the basis of her sex in connection with her salary. On the Title VII claims the district court held that Feazell had estab-

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. There is some confusion here as there is no such person as "Harold Mussett;" the jury was apparently referring to either Harold Sebert or James Mussett.

lished a prima facie case of sex-based discrimination with regard to her compensation by Tropicana but that Tropicana had articulated legitimate non-discriminatory reasons for any differences between her compensation and that of Tropicana's male accounting supervisors, reasons that Feazell failed to prove were pretextual. The district court held that Feazell failed to prove intentional discrimination by Tropicana.

On appeal Feazell makes three primary assertions: the district court evaluated Tropicana's evidence in defense of the Title VII claims under an erroneous interpretation of the applicable burden of proof; the district court erred in excluding testimony by Tropicana's management personnel offered as evidence of intentional discrimination and in denying Feazell's motion for a new trial on this ground; and the district court's findings of fact were not sufficiently detailed to permit meaningful appellate review. We affirm.

The parties entered into a pretrial stipulation in which they agreed that the burdens of proof and production on the Title VII claims were governed by the principles enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Furnco Construction Co. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The district court entered a pretrial order stating that the pretrial stipulation was approved and adopted and along with the order was to govern the trial of the case.

Feazell's claims turn on allegations that seven male employees were paid more wages than she for substantially equal work. At trial Feazell attempted to introduce the testimony of Wingate, who had been a manager in the Financial Department at Tropicana, and the deposition testimony of Mattson, who at the time of the deposition was manager of Tropicana's Payroll and Accounts Payable Departments, as evidence of intentional discrimination by Tropicana. In an effort to estab-

lish the attitudes of Rossi, the founder of Tropicana and its president until it was sold to Beatrice Foods, and Ogleby, its Vice President of Finance, Feazell asked Wingate:

> In your position as a manager in the financial department at Tropicana, did you ever express the view that Mr. Rossi and Mr. Ogleby did not pay women as much as men?

Tropicana's objection to this question as irrelevant personal opinion was sustained by the court.

Feazell later attempted to introduce the following deposition testimony of Mattson:

> Q: Were you employed at Tropicana when Mr. Rossi was there?
>
> A: Yes.
>
> Q: Were you employed when Mr. Ogleby was there?
>
> A: Yes.
>
> Q: Did you ever tell George Feazell that Mr. Rossi and Mr. Ogleby did not like to pay women what men were paid?
>
> A: Yes.
>
> Q: In your opinion is that attitude still prevalent at Tropicana?
>
> A: Not as much.

Tropicana objected to the testimony as irrelevant, and the district court sustained the objection:

> What this question is is did you ever tell George Feazell that Mr. Rossi and Mr. Ogleby did not like to pay women what men were paid? His answer was yes. There is no suggestion here that that was, in fact, either Mr. Rossi or Mr. Ogleby's belief, opinion or that they had ever made such a statement. This is this witness's testimony that that's what he told George Feazell. We don't know whether its true or not....

> .    .    .    .    .

> [i]f [Wingate and Mattson's] opinion becomes material, then you may elicit their opinion, but not with that background, and there is no basis set forth for this opinion to get a manager from Tropicana, put him on the stand and say, in your opinion, does Tropicana discriminate against women? You can't ask him that

question that way. You need to lay a predicate showing some basis for which—on which that opinion is predicated and showing some foundation for it. But just to say that because he has a position in the firm, in Tropicana and he has the personal opinion that Tropicana discriminates against women is not....

Feazell timely filed a motion for new trial challenging the district court's failure to admit the testimony of both Wingate and Mattson into evidence on the ground that their statements were admissions by Tropicana's management personnel admissible under Fed.R.Evid. 801(d)(2)(D). The motion was denied.

The district court's conclusion that Tropicana had not violated Title VII rested on extensive factual findings. Plaintiff is a white female who has been employed by defendant Tropicana since March of 1973. She had no previous formal accounting education or experience and was intially employed as a clerk but then promoted to "accountant" in 1978 and to "supervisor-cost accounting" in 1983. Plaintiff completed four accounting classes between 1979 and 1983 but has no college degree or professional certification in accounting. She has received regular increases in salary.

The district court found that Feazell had proven that the work she performed required equal skill, effort and responsibility and was performed under similar working conditions as that performed by the seven male supervisors to whom she compared her position and that Tropicana paid a lower wage to her than to such male employees. The court concluded, however, that sex was not a factor in Tropicana's employment decisions and actions regarding the compensation of Feazell and these seven male employees. The court set forth the qualifications, years with Tropicana, and salaries of the seven male supervisors and compared their salaries and raises at various points to those of Feazell. It concluded that the differences between Feazell's salary and that of each male supervisor were based on factors other than sex, including CPA certification, length of service with Tropicana, annual merit raises, promotions, participation in the bonus-buyout,[2] years as supervisor, prior accounting experience, college degree in accounting, or refusal to accept a lower initial salary at Tropicana.

## I. BURDEN OF PROOF ON TITLE VII CLAIMS

Feazell contends that the district court erred when it allocated the burdens of proof and production according to the structure set forth in *McDonnell Douglas* under which the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for wage disparities once a plaintiff has established a prima facie case of discrimination under Title VII, but the burden of persuasion always remains with the plaintiff alleging sex discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).[3] In *County of Washington, Oregon v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981) the Supreme

---

**2.** A bonus-buyout in 1981 terminated a previous profit sharing program participated in by all supervisory personnel by permanently adding to each participant's annual salary an amount equal to the bonus the participant was entitled to receive in the last year of the program. Feazell was not entitled to participate in this program because she did not become a supervisor until after 1981.

**3.** Under *McDonnell Douglas* the plaintiff first has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the defendant to articulate some legitimate non-discriminatory reason for the differential treatment. If the defendant carries this burden, the plaintiff must then have the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093; *McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. at 1824–25.

Court held that the "Bennett Amendment" to Title VII extended the protection of the four affirmative defenses of the Equal Pay Act to Title VII actions for sex-based wage discrimination and therefore that wage differentials attributable to one of the four affirmative defenses are not unlawful employment practices under Title VII.[4] The Court, however, explicitly refrained from deciding how burdens of proof or production should be structured in a Title VII action premised on a claim of sex-based wage discrimination and the Eleventh Circuit has yet to reach the issue. Feazell contends that when a Title VII claim addresses salary discrepancies between male and female employees performing the same work, the burden of proof should be allocated in the same fashion as in actions under the Equal Pay Act, i.e., the burden that shifts to the defendant to rebut a prima facie case of sex-based wage discrimination should be one of both production and persuasion and not of mere production and should be limited to the four affirmative defenses set forth in the Equal Pay Act.

We find it unnecessary to reach this issue because of the pretrial stipulation between the parties in which they agreed that the burdens of proof and production in the Title VII action were governed by the principles enunciated in *McDonnell Douglas, Furnco* and *Burdine.*

■ Matters stipulated to in a pretrial order are binding on the parties unless

modified and normally cannot be objected to on appeal. *See Funding Systems Leasing Corp v. Pugh,* 530 F.2d 91, 95 (5th Cir.1976); *U.S. v. Tampa Bay Garden Apartments, Inc.,* 294 F.2d 598, 606 (5th Cir.1961). Pretrial orders control the subsequent course of action unless modified to prevent manifest injustice. Fed.R.Civ.P. 16. Feazell did not attempt to amend the pretrial stipulation and did not object to the application of the *McDonnell Douglas* framework during trial. She in fact presented her case pursuant to *McDonnell Douglas* standards. Her first objection to these standards is raised before this court despite the fact that the cases she relies upon existed at the time of her trial. There has been no manifest injustice warranting this court's disregard of the pretrial stipulation and order.

## II.  EXCLUSION OF TESTIMONY

■ Feazell contends that the district court erred in excluding the testimony of Wingate and the deposition testimony of Mattson and in denying her motion for a new trial on this ground. Determinations of admissibility of evidence rest largely within the discretion of the trial judge and will not be disturbed on appeal absent a clear showing of an abuse of discretion. *U.S. v. Russell,* 703 F.2d 1243 (11th Cir.), *reh'g denied,* 708 F.2d 734 (1983). We find that the district court did not abuse its discretion in excluding the testimony.[5]

---

**4.** The Bennett Amendment to Title VII, 42 U.S.C. § 2000e–2(h) provides:

It shall not be an unlawful employment practice under this subchapter for any employer to differentiate upon the basis of sex in determining the amount of the wages paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of title 29.

The Equal Pay Act, 29 U.S.C. § 206(d)(1) provides:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which

requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

The Bennett Amendment, however, does not preclude recovery under Title VII for a claim of discriminatory compensation where the jobs are not substantially equal. *Gunther,* 452 U.S. at 178–79, 101 S.Ct. at 2252.

**5.** A district court's denial of a motion for a new trial is also evaluated under the abuse of discretion standard. *U.S. v. Branca,* 677 F.2d 59, 61 (11th Cir.1982). We therefore do not address this issue independently, and our holding with regard to the exclusion of the testimony applies equally to the denial of a new trial.

■ Wingate was questioned as to his opinion about the salaries paid by Rossi and Ogleby to their male and female employees. The purpose of this question was to establish the attitudes of Rossi and Ogleby, to prove a motive for discriminating against Feazell with regard to her pay. The only information to be obtained from the question as phrased, however, was Wingate's view about his superiors' actions. Because his opinion about his superiors' attitudes was irrelevant unless clearly connected to the attitudes of Rossi and Ogleby, the district court did not err in excluding this question as irrelevant personal opinion.[6] Arguably the question posed to Wingate was a question of fact, potentially admissible to prove that Wingate did express this view but not admissible to prove the truth of the matter asserted. Nevertheless, as such it is still irrelevant to the issues at hand—what Rossi and Ogleby thought about paying women or whether they intentionally discriminated against Feazell.

The question posed to Mattson—"Did you ever tell George Feazell that Mr. Rossi and Mr. Ogleby did not like to pay women what men were paid?"—is arguably admissible as a question of fact, introduced not for the truth of the matter asserted but rather to establish the making of the statement. Yet the follow-up question—"In your opinion is that attitude still prevalent at Tropicana?"—was clearly an opinion question properly excluded as irrelevant, and plaintiff's counsel did not ask follow-up questions that would have made the preceding fact question relevant to the inquiry before the court. As noted by the court, there was no suggestion that Rossi and Ogleby in fact had this attitude or that they themselves had ever made such statements. Counsel, therefore, never connected the fact question to the issue in the case—the attitudes of Rossi and Ogleby.

Nor did plaintiff's counsel ever connect Mattson's statement to the time frame in the case. As pointed out by counsel for the defendant, plaintiff's counsel never laid a predicate as to when this conversation took place and therefore never established that the statement was relevant to the time period under consideration; the question attempting to do this was properly excluded as an irrelevant opinion. Without the appropriate follow-up questions the fact question became of no great consequence. The district court recognized this when it stated that Mattson's opinion was not material. The court therefore did not abuse its discretion in excluding this testimony.[7]

Even if there is slight potential relevance to the testimony of either Wingate or Mattson, the district court's failure to admit the testimony was harmless error given the strength and extent of the evidence presented by Tropicana and found by the jury and the district court to justify the wage differentials. This third party opinion evidence would have had only negligible impact at most.

## III. SUFFICIENCY OF FINDINGS OF FACT

Fed.R.Civ.P. 52(a) required the district court to issue findings of fact and conclusions of law on the Title VII claims. Plaintiff contends that the district court's findings of fact are so insufficient and ambiguous as to preclude meaningful appellate review. When the district court compared Feazell's qualifications and salary to those of the seven male employees, it found that the salary differentials "were based on factors other than sex including" longer service with Tropicana or as a supervisor, a college degree in accounting, CPA certification, prior supervisory experience, or refusal to accept a lower initial salary. Feazell argues that this failure by the district court to state specifically which additional

---

6. Even assuming that such evidence is remotely relevant in that it has a tendency to make the existence of a fact—intentional discrimination—more probable than it would be without the evidence, its probative value is substantially outweighed by the danger of unfair prejudice to the defendant given its lack of substantiation. *See* Fed.R.Evid. 401, 403.

7. Because we hold that the testimony was irrelevant, we need not reach the issue of whether the statements were vicarious admissions under Fed.R.Evid. 801(d)(2)(D).

"factors other than sex" contributed to the salary differential between Feazell and another employee, and in particular what portion of a salary differential was due to an articulated factor and what portion was due to unarticulated "factors other than sex," precludes her from demonstrating that the district court's conclusions regarding pretext were erroneous and renders this court incapable of determining whether the district court's ultimate conclusions on the Title VII claims were clearly erroneous.

Much of Feazell's argument boils down to a complaint about the court's failure to specify what portion of any salary differential was attributable to a certain factor and what portion was attributable to other unspecified factors. Feazell also complains about the district court's failure to address the factor of tenure with regard to those employees with less tenure than she on the ground that this court does not know whether the district court determined whether Tropicana gave tenure the same weight in each salary decision.[8]

■■■ Although Fed.R.Civ.P. 52(a) requires specific findings of fact, it does not require a finding on every contention raised by the parties. "The findings and conclusions we review must be expressed with sufficient particularity to allow us to determine rather than speculate that the law has been correctly applied." *Hydrospace-Challenger, Inc. v. Tracor/MAS, Inc.*, 520 F.2d 1030, 1034 (5th Cir.1975). District court findings "must be sufficiently detailed to give [the appellate court] a clear understanding of the analytical process by which the ultimate findings were reached and to assure [the appellate court] that the trial court took care in ascertaining the facts." *Golf City, Inc. v. Wilson Sporting Goods Co.*, 555 F.2d 426, 433 (5th Cir.1977); *see also Doyal v. Marsh*, 777 F.2d 1526, 1534 (11th Cir.1985). The district court's findings were sufficiently detailed to meet this standard.

The district court set forth detailed findings of fact. It evaluated the evidence carefully, setting forth the qualifications of Feazell and the seven male supervisors at issue and comparing Feazell's salary at the time of promotion to supervisor, or certain of her salary increases while supervisor, to those of the seven male employees.[9] These

---

8. The fourth issue raised by Feazell on appeal— "whether the district court applied the correct legal standard in evaluating the sufficiency of Tropicana's defense to the Title VII claims"—is in fact a restatement of this same complaint. Feazell contends that Tropicana's rebuttal evidence was legally insufficient even when measured under the *McDonnell Douglas* standard. She argues that because Tropicana failed to explain how its company-wide seniority and supervisory seniority impact upon an employee's salary, such factors cannot constitute sufficient rebuttal evidence even under the *McDonnell Douglas* burden of production.

The defendant's burden under *McDonnell Douglas* is to produce evidence that articulates a legitimate non-discriminatory reason for the action at issue and that frames the factual issue with sufficient clarity to give the plaintiff a full and fair opportunity to demonstrate pretext. *Burdine,* 450 U.S. at 255–56, 101 S.Ct. 1094–95. Feazell argues that by failing to explain just how company seniority or supervisory experience affects salaries, Tropicana denied her a full and fair opportunity to demonstrate that these proffered reasons were pretext.

According to Feazell, the problems inherent in such a rebuttal are remedied under the Equal Pay Act by requiring a defendant who attempts to rebut a prima facie showing of wage discrimination by relying on differences in seniority to show that the varying compensation levels at issue resulted from the application of a seniority "system." She argues that this same requirement should be inserted into Title VII. She does not argue that the law required the district court to apply this requirement, only that this court should adopt this requirement. It is not for this court to insert new standards into Title VII. Tropicana articulated non-discriminatory reasons for the wage differentials, and the district court was not clearly erroneous in finding that Tropicana thus satisfied its burden of production.

9. Tropicana had no clear salary grade classification system: persons in identical jobs might not earn the same salaries because salaries at any level were determined by an employee's initial salary (which turned on academic degrees, work experience, and market wages), promotion increases and annual merit increases. The nature of Tropicana's method of determining salaries renders it impossible to break down each salary into the percentage component parts plaintiff requests and thereby justifies the district court's analysis. A salary "system" such as Tropicana's is difficult to evaluate but our job is not to reevaluate the evidence, it is only to determine whether the district court's findings

findings were the factual predicate for its conclusions of ultimate fact and demonstrate that the court took care in ascertaining the facts. The thought process of the district court is evident; the court's ultimate findings were not couched in conclusory terms without support. All of the findings, when read together, demonstrate that the district court's ultimate findings on the Title VII claim were not clearly erroneous.[10] We therefore hold that the district court's findings of fact were sufficient.

AFFIRMED.

were sufficiently detailed to permit meaningful appellate review. The facts found by the district court were sufficient.

10. The district court's findings of fact, including its findings of non-discrimination, are reviewed

under the clearly erroneous standard. *Pullman-Standard v. Swint*, 456 U.S. 273, 287–90, 102 S.Ct. 1781, 1789–91, 72 L.Ed.2d 66 (1982); *ACLU of Georgia v. Rabun County*, 698 F.2d 1098, 1110 (11th Cir.1983).