Deborah A. WILLIAMS, Plaintiff,

v.

EMCO MAIER CORPORATION,
Defendant.

Case No. 00–CV–1228.

United States District Court,
S.D. Ohio,
Eastern Division.

Aug. 12, 2002.

Joseph Miles Gibson, Columbus, OH, for Plaintiff.

Fred G. Pressley, Porter Wright Morris & Arthur, Columbus, OH, for Defendant.

## OPINION AND ORDER

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on the Defendant's Motion for Summary Judgment, filed on September 27, 2001. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

For the following reasons, the Court **GRANTS** the Defendant's Motion for Summary Judgment.

## II. FACTS

The Defendant, Emco Maier Corporation ("Emco Maier"), is engaged in the distribution and sale of certain machines to businesses in the United States, Canada, and Mexico. The Columbus location is the only operation in the United States. Emco Maier's parent company is located in Austria.

The Plaintiff, Deborah Williams, began to work for Emco Maier in August 1995. For several years, Ms. Williams has been disabled[1] by virtue of degenerative joint arthritis that affects her knees, feet, and ankles. Emco Maier accommodated Ms. Williams' disability for several years. For example, in 1997, when Ms. Williams had difficulty walking up and down stairs, the company moved her office to the first floor. Then, in October 1998, when she had knee replacement surgery, Emco Maier accommodated her four-month leave of absence.

In 1998 and 1999, Emco Maier began to go through reductions in force ("RIFs") in an attempt to alleviate financial difficulties that the company had been experiencing.[2] During those RIFs, various employees, including employees who were not disabled, were let go, but Ms. Williams retained her job.

In 2000, however, Emco Maier's Austrian parent company ordered that it take additional measures to salvage its finances. In January 2000, Emco Maier terminated its own President. The parent company also notified the Vice President of Finance, Mike Ryan, that additional staffing cuts were necessary. Pursuant to that directive, Emco Maier developed a two-prong reduction plan. The first prong of the plan involved attrition, whereby the company would not replace certain employees who voluntarily left their employment. The second prong involved the elimination of certain positions, whereby the company would terminate the incumbent employees who held those positions.

In accordance with the attrition prong of the plan, several Emco Maier employees voluntarily left their jobs, and those employees were not replaced. Although this helped the company's financial situation somewhat, Emco Maier still needed to terminate other positions. Thus, pursuant to the second prong of the plan, in March 2000, Emco Maier identified three positions to eliminate: (1) Purchasing Manager; (2) Set–Up Technician; and (3) Turret Repair.[3] These positions were held by Ms. Williams, Eric Brown, and Jim Pirog, respectively. Neither Mr. Brown nor Mr. Pirog has any known disabilities.

---

**1.** Emco Maier disputes that Ms. Williams is "disabled," as that term is defined in disability discrimination statutes, but concedes this issue for purposes of this motion. Thus, for the present purposes, the Court shall refer to Ms. Williams' medical impairment as a "disability," without deciding whether it constitutes a disability under the law.

**2.** Emco Maier's Austrian parent company went through bankruptcy, although it is unclear precisely when that occurred.

**3.** During oral argument on the motion for summary judgment, Emco Maier stated that it was actually the Austrian parent company that determined which positions were to be eliminated.

On March 3, 2000, Mr. Ryan eliminated the position of Set–Up Technician, and terminated Mr. Brown's employment. On March 10, 2000, Mr. Ryan eliminated the Plaintiff's position, and terminated her employment. At the end of April 2000, the company eliminated the position of Turret Repair, and terminated Mr. Pirog's employment.

A few days after Mr. Brown's termination, another employee, Dave Ladrach, who had worked in the warehouse with Mr. Brown, voluntarily resigned. Although Emco Maier had been trying to reduce its staff, Mr. Ladrach's unexpected resignation left the warehouse understaffed. Mr. Brown was able to perform Mr. Ladrach's job duties, so, approximately one week after the company had terminated his employment, Emco Maier recalled Mr. Brown to do Mr. Ladrach's job. Mr. Brown worked in this position for approximately one week.[4]

At the time that Ms. Williams was terminated from her employment, Emco Maier had twenty-nine employees. Today, the company employs thirty-six people.

Ms. Williams filed a Complaint against Emco Maier with this Court on October 19, 2000. In her Complaint, she alleges violations of: (1) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.; and (2) Ohio Revised Code § 4112.02. She seeks back pay, compensatory damages, punitive damages, attorney's fees, and any other relief that this Court deems proper. This matter is now before the Court on the Defendant's Motion for Summary Judgment.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, to-gether with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Barnhart v. Pickrel, Schaeffer & Ebeling Co., 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the non-moving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The non-moving party, however, "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); see Celotex, 477

---

4. At the end of that week, Mr. Brown voluntarily resigned because of his concerns re-garding the company's financial stability.

U.S. at 324, 106 S.Ct. 2548; *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994). Furthermore, the mere existence of a scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995).

## IV. ANALYSIS

Ms. Williams alleges that Emco Maier violated federal and state law by discriminating against her on the basis of her disability. The ADA reads, in relevant part:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, or other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). Ohio Rev.Code § 4112.02(A) reads, in relevant part:

It shall be an unlawful discriminatory practice [f]or any employer, because of the ... disability ... of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

OHIO REV.CODE § 4112.02(A). Because the essential elements of a claim under Ohio law and the ADA are the same, the Court will examine the Plaintiff's state and federal claims together. *See Hoffman v. Fidelity Brokerage Services, Inc.,* 959 F.Supp. 452, 457 n. 1 (S.D.Ohio 1997) (concluding that case law pertaining to claims brought pursuant to the ADA applies equally to claims brought under the Ohio discrimination statute); *Columbus Civ. Serv. Comm. v. McGlone,* 82 Ohio St.3d 569, 697 N.E.2d 204, 206–07 (1998) (stating that Ohio courts may look to cases interpreting the ADA for guidance in interpreting the Ohio statute).

■ To establish a *prima facie* case of disability discrimination, the plaintiff must demonstrate: (1) that she is disabled; (2) that she is otherwise qualified for the job, with or without reasonable accommodation; (3) that she suffered an adverse employment decision; (4) that the employer knew or had reason to know of her disability; and (5) that, after her termination, the position remained open, or the disabled employee was replaced. *Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1185 (6th Cir.1996) (citations omitted); *see McGlone,* 697 N.E.2d at 206 (Ohio 1998) (holding that, to establish a *prima facie* case of disability discrimination under Ohio law, the plaintiff must show: (1) that she was handicapped; (2) that an adverse employment action was taken by her employer, at least in part, because she was handicapped; and (3) that the employee can safely and substantially perform the essential functions of the job in question with reasonable accommodation) (citing *Hazlett v. Martin Chevrolet, Inc.,* 25 Ohio St.3d 279, 496 N.E.2d 478, 480 (1986)). If the plaintiff succeeds in presenting a *prima facie* case, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment action. *Monette,* 90 F.3d at 1185–86; *Hood v. Diamond Prods., Inc.,* 74 Ohio St.3d 298, 658 N.E.2d 738, 741 (1996). If the employer succeeds in doing so, then the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason constitutes pretext. *Monette,* 90 F.3d at 1186; *Hood,* 658 N.E.2d at 742.

■ When an employee is terminated as part of a reduction in force ("RIF"), her

duty to present a *prima facie* case is somewhat heightened. *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 517 (6th Cir.1991) (citing *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir.1986)). The duty is heightened because, as long as they act without discriminatory intent, employers retain the right to "eliminate positions in the name of economic necessity or efficiency, even when those positions are held by [disabled] workers." *Id.* Thus, in RIF cases, the terminated employee must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990) (citations omitted), *cert. denied*, 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990). Usually, a plaintiff can satisfy this additional prong of her *prima facie* case by demonstrating that a " 'comparable non-protected person was treated better.' " *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir.1998) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir. 1992)).

For purposes of this motion, the parties do not dispute that Ms. Williams has met some elements of her *prima facie* case. In particular, Emco Maier concedes that the Plaintiff is disabled, that she is otherwise qualified for her job, that she suffered an adverse employment decision by virtue of her termination, and that Emco Maier was aware of her disability. The parties dispute, however, whether Ms. Williams has succeeded in demonstrating the final element of her *prima facie* case, i.e., whether Ms. Williams has presented additional direct, circumstantial, or statistical evidence tending to show that she was singled out for termination for impermissible reasons.

### A. Existence of RIF

■ To determine whether Ms. Williams has succeeded in presenting a *prima facie* case, first, the Court must determine whether this is, indeed, a RIF case. In *Barnes,* the Sixth Circuit stated that:

> [a] work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes,* 896 F.2d at 1465.[5]

Ms. Williams argues that, at the time that she was terminated, Emco Maier was not engaging in a RIF. In support of her argument, she points out that, today, the company employs more people than it did at the time that she was discharged. Specifically, the Defendant employed twenty-nine people at the time that Ms. Williams was discharged, but it now employs thirty-six people. Ms. Williams also states that she was the only employee who was terminated as part of the alleged RIF. She contends that, while the company purported to terminate Mr. Brown's position, they

---

**5.** The Sixth Circuit has recognized that the circumstances under which an employee will be deemed to have been replaced may be broader than those outlined by *Barnes. See Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 522 (6th Cir.1997) (finding that the terminat-

ed employee was replaced when another employee was promoted from part-time to full-time work). This part of the holding from *Barnes* is not an issue here, however, as Ms. Williams' former duties have been distributed among other employees.

rehired him soon after they allegedly terminated him. Thus, Ms. Williams claims that the RIF of which her termination was allegedly a part was fabricated by the Defendant.

Despite Ms. Williams' arguments, the Court finds that this is, indeed, a RIF situation. The Defendant has presented uncontroverted evidence that the company was suffering financially for a significant period of time prior to Ms. Williams's termination. Due to its financial difficulties, Emco Maier engaged in RIFs in 1998 and 1999, during which it terminated the positions of non-disabled employees, and in January 2000, it was forced to terminate its own President. Then, before eliminating any additional positions, the company attempted to alleviate its financial difficulties by engaging in attrition, during which it declined to replace employees who voluntarily left their jobs. None of these efforts, however, proved successful and the company was forced to eliminate additional positions to alleviate its financial difficulties.

Furthermore, although Ms. Williams contends that she was the only person who was discharged as part of the RIF in 2000, in actuality, Mr. Pirog's position was eliminated and his employment was terminated only one month after Ms. Williams was terminated. In addition, although Ms. Williams claims that Mr. Brown was rehired mere days after he was terminated, in actuality, he was brought back to work only to fill an unexpected vacancy, and his position remained terminated. The Court also notes that, even if Ms. Williams had been the only employee terminated, that would not undermine the conclusion that this was a RIF, as *Barnes* defines a RIF situation to include circumstances wherein "one *or more* " employees are terminated. *Barnes*, 896 F.2d at 1465 (emphasis added).

Finally, the fact that the company employs more people today than it did at the time of Ms. Williams' termination does not mean that the company did not, in fact, engage in a RIF two years ago. Surely, a company facing financial hardships may wish to eliminate certain positions in an effort to alleviate those difficulties, while still adding other positions in an effort to improve the company's operations. *See Wohler v. Toledo Stamping,* 1997 WL 603422, at *5, 125 F.3d 856 (6th Cir.1997) (recognizing that "it may be sensible in a force reduction to eliminate some positions ... while at the same time creating others"); *see also Swanson v. Leggett & Platt,* 154 F.3d 730, 736 (7th Cir.1998) (finding that the employer had engaged in a RIF, even though it hired consultants after terminating its own employees); *Watkins v. Sverdrup Tech., Inc.,* 153 F.3d 1308, 1315–16 (11th Cir.1998) (concluding that the RIF was legitimate despite the fact that the company hired new employees and experienced a net increase in personnel). Significantly, Ms. Williams concedes that the positions that have been added to the company since her termination are unrelated to her former position.

Therefore, the Court find that Ms. Williams was terminated from her employment as part of a work force reduction, and that her claim is subject to a heightened proof requirement.

### B. Proof of Discrimination

The Court now turns to the question of whether Ms. Williams has set forth a *prima facie* case by presenting additional evidence tending to show that Emco Maier singled her out for termination based on impermissible considerations. The Court also addresses the issue of whether Ms. Williams has demonstrated that the Defendant's legitimate, non-discriminatory reason for her termination is pretextual. The Court merges its discus-

sion of these two issues because Ms. Williams has relied on the same evidence to make both showings.[6]

Ms. Williams purports to present evidence tending to show that the Defendant singled her out for termination based on her disability, and that the Defendant's proffered reason for her termination constitutes pretext. First, she reiterates her claim that the company did not, as it alleges, engage in a RIF, but instead terminated her because of her disability. Second, Ms. Williams contends that a co-worker, Mr. Ladrach, told her that he believed that she was "downsized" because of her disability. With respect to this allegation, the following colloquy took place during the Plaintiff's deposition:

Q: Did you have any discussion with [Mr. Ladrach] regarding your layoff from Emco Maier?

A: Yes.

Q: And what did you tell him?

A: I told him the truth, I was laid off. I was downsized.

Q: Did he have a response to that?

A: He was surprised.

Q: Did he say anything else besides being surprised?

A: I can't recall.

Q: Did he ever tell you that he felt you were downsized because you had a disability?

A: Yes.

Q: And he told you that in this one conversation that you had?

A: Yes.

Q: And did he tell you why he felt you were laid off because of a disability?

A: No. He didn't say why. We just discussed it.

Q: Well, to your knowledge, did he have any role in the decision to lay you off?

A: No, he did not.

Q: Has he ever told you that the person who laid you off told him that you were being laid off because of your disability?

A: I can't recall if he said that or not.

Q: Did he ever tell you that he heard anyone saying that you were laid off because you had a disability or work restrictions?

A: I do not recall that.

Q: [H]ad he given you any more specifics as to why he felt you were laid off because of a disability?

A: No, no more specifics.

Q: Did you discuss anything regarding your layoff besides what you already told me?

A: No.

The Court finds that the Plaintiff has failed to present any evidence that Emco Maier targeted her because of her disability, or that the company's stated reason for her termination was pretextual. First, having already found that Ms. Williams was, in fact, terminated as part of a RIF,

6. The Court notes that the merger of these issues is also proper as the Court has already recognized the validity of the Defendant's non-discriminatory reason for its employment action—to wit, Ms. Williams was terminated as part of a RIF engaged in by the company as an effort to alleviate its financial difficulties, pursuant to a directive from the Austrian parent company. The Defendant need not demonstrate any more than it has with re- spect to the RIF to meet its burden of presenting a legitimate, non-discriminatory reason for the termination. See Hopkins v. Elec. Data Sys. Corp., 196 F.3d 655, 662 (6th Cir. 1999) (finding that the employer had a legitimate, non-discriminatory reason for the termination as part of a RIF when the plaintiff presented no evidence that the RIF was not bona fide or that it was targeted at eliminating disabled employees).

her reiteration of her assertion that the RIF was fabricated by the Defendant is meaningless at this stage of the analysis. Second, Ms. Williams has failed to present any additional evidence that she was targeted because of her disability. In particular, she has failed to demonstrate that she was treated any differently than employees who were not disabled. She concedes that neither Mr. Brown nor Mr. Pirog, who were also terminated as part of the RIF, was disabled. She also admits that, during the RIFs in 1998 and 1999, the company terminated employees who were not disabled while she retained her position.

Third, the Plaintiff's reference to her conversation with Mr. Ladrach does nothing to support her claim of discrimination. To begin with, Ms. Williams has failed to present either an affidavit or deposition testimony of Mr. Ladrach himself. Rather, she relies on the inadmissible hearsay contained in her own deposition testimony. In addition, even if Mr. Ladrach himself had testified regarding his opinion, Mr. Ladrach had no role in the decision to terminate her employment. Thus, his opinion could not constitute direct evidence of discrimination. *See Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir.2000) (stating that a decision-maker's express statement of a desire to take action against employees who are members of a protected class constitutes direct evidence of discriminatory intent). Significantly, Mr. Ladrach's opinion is not even circumstantial evidence of the company's discrimination because he was not a supervisor or manager in the company, but simply one of the Plaintiff's co-workers.[7] *See Jacklyn v. Schering–Plough Healthcare Prods. Sales*

*Corp.,* 176 F.3d 921, 928 (6th Cir.1999) (concluding that statements by a co-worker that did not concern matters of that individual's employment or agency were inadmissible because "[t]here is a critical difference between making a statement while one is an employee and having the actual or implied authority to make such a statement on behalf of your employer"); *Spencer v. Hilti, Inc.,* 116 F.3d 1480, 1997 WL 359094, at *3 (6th Cir.1997) (finding that the statements of co-workers that the plaintiff was being terminated because of his age were "not significant," because the statements of employees who were not in a supervisory position could not be attributed to the defendant employer).

Moreover, it appears that Mr. Ladrach's opinion constituted nothing more than pure speculation, and is, therefore, inadmissible. *See Jacklyn,* 176 F.3d at 928 (stating that, for a lay witness's opinion testimony to be admissible, the opinion must be rationally based on the witness's first-hand knowledge); *Feazell v. Tropicana Products, Inc.,* 819 F.2d 1036, 1041 (11th Cir.1987) (finding that an employee's opinion about his superiors' actions is irrelevant unless clearly connected to the superiors' attitudes). Thus, the Plaintiff's deposition testimony regarding Mr. Ladrach's alleged statement is insufficient to raise a genuine issue of material fact regarding the Defendant's motives for terminating the Plaintiff's employment.

Therefore, the Court finds that the Plaintiff has neither set forth a *prima facie* case of discrimination, nor has she raised a genuine issue of material fact with respect to the Defendant's proffered reason for its employment action.

---

**7.** In fact, some evidence tends to indicate that Ms. Ladrach may not have even been a co-worker at the time that he made the statements to Ms. Williams because he had already resigned from the company.

788

## V. CONCLUSION

Based on the foregoing analysis, the Court hereby **GRANTS** the Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**