**Jerome B. WILLIAMS, Plaintiff,**

v.

**GENERAL ELECTRIC COMPANY, et al., Defendants.**

**No. C2–01–681.**

United States District Court, S.D. Ohio, Eastern Division.

July 1, 2003.

Russell Allen Kelm, Law Offices of Russell Kelm Columbus, OH, for Plaintiff.

Charles Matthew Roesch, Cincinnati, OH, for Defendants.

### ORDER AND OPINION

MARBLEY, District Judge.

### I. Introduction

This matter is before the Court on Defendants The General Electric Company, Michael Coleman, Norris Woodruff, and Lloyd Trotter's Motion for Summary Judgment. For the following reasons, Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part, and Plaintiff's disability discrimination claims are hereby **DISMISSED** with prejudice.[1]

### II. Facts

Because this matter is before the Court on Defendants' Motion for Summary Judgment, the Court will view the facts in the light most favorable to Plaintiff.

Jerome B. Williams ("Plaintiff") was first employed with The General Electric Company's Industrial Systems Division ("GE") in 1967, and remained with GE until his position was eliminated on December 26, 2000. Plaintiff is an engineer who holds bachelor's and master's degrees in electrical engineering.

In March 1998, Plaintiff was promoted to the position of Regional Sales Manager in the Power Management Division of GE. His job as Regional Sales Manager was to manage sales of power management equipment within his geographic territory. In early 1999, Defendant Michael Coleman joined the Power Management Division, and later that year, he became Plaintiff's direct supervisor. During this period, the business strategy of the Power Management Division was evolving to focus on selling utility substation systems. These systems were a new product for GE that had been first introduced in 1998. Coleman was under orders to increase substantially sales of these utility substation systems.

Plaintiff was unaware of GE's goals for selling utility substation systems, and he continued to focus his efforts on selling individual components, specifically relays, about which he was particularly knowledgeable. After sixty days as Plaintiff's supervisor, Coleman decided to remove Plaintiff from his position as Regional Sales Manager in November 1999. Coleman purportedly based this decision on the fact that Plaintiff was not a good enough salesperson and was not knowledgeable enough about substation systems. Plaintiff was replaced by David Campbell, who was 31 years old and had no experience selling substation systems, although he had some expertise in how those systems work. Campbell was not an engineer. Although Coleman admits that given Plaintiff's engineering background he could have been trained regarding substation systems, Coleman never asked Plaintiff to attend any such training.

After losing his position as Regional Sales Manager in GE's Power Management Division, Plaintiff was able to secure a position as a Transmission Leader with GE's Transmission and Distribution Sales Division. His direct supervisor in that position was Thomas Bilia. Bilia initially offered Plaintiff a job in Indianapolis, but

---

**1.** Plaintiff agreed to dismiss voluntarily his disability discrimination claims with prejudice.

Plaintiff wanted to remain near Columbus, Ohio, for family and health reasons. GE was able to accommodate Plaintiff by creating a new Transmission Leader position for Plaintiff based in Westerville, Ohio, and realigning the geographic territories for other Transmission Leaders. Plaintiff began his position as a Transmission Leader on January 10, 2000. The position was essentially a demotion for Plaintiff who had held the same job twenty years before.

Bilia evaluated Transmission Leaders only via subjective criteria, never considering their objective performance, such as sales history. Bilia recognized that it could require up to fourteen months for a new Transmission Leader to overcome the learning curve associated with the job. In October 2000, the entire Transmission and Distribution Sales Division underwent a reduction in force. Bilia was required to eliminate one of the three Transmission Leaders under his supervision. Bilia was given complete discretion to decide which employee to terminate, but human resources provided him with a matrix for evaluating the Transmission Leaders. The matrix required Bilia to rank the Transmission Leaders in eight categories. Plaintiff ranked last in six of those categories, largely because he had the least seniority in the position. Based on this matrix, Bilia chose to eliminate Plaintiff's position. Bilia did not consider the fact that Plaintiff led the three Transmission Leaders in sales in 2000 in seven out of ten product categories. Bilia allegedly believed that sales were not generated solely by the Transmission Leaders, and were therefore not the best indicator of job performance.

### III. Procedural History

Plaintiff originally filed his Complaint in this case on June 25, 2001, in the Court of Common Pleas, Franklin County, Ohio. Defendants removed the case to this Court on July 18, 2001. Plaintiff filed his Amended Complaint on December 27, 2001, alleging age discrimination pursuant to 29 U.S.C. § 623 and Ohio Revised Code sections 4112.01, 4112.02, and 4112.99, and disability discrimination pursuant to 42 U.S.C. § 12101 and Ohio Revised Code sections 4112.01 and 4112.99.

Defendants filed a Motion for Summary Judgment on all of Plaintiff's claims on February 7, 2003. In response, Plaintiff defended his age discrimination claims, but agreed to dismiss voluntarily his disability discrimination claims with prejudice. Therefore, the Court **DISMISSES** Plaintiff's disability discrimination claims with prejudice, and considers Defendants' Motion for Summary Judgment with respect to Plaintiff's age discrimination claims only.

### IV. Standard of Review

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

## V. Analysis

### A. Time Bars

#### 1. Filing Charge with EEOC as Prerequisite to ADEA Claims

Filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") is a prerequisite to filing a civil lawsuit against an employer for a violation of the ADEA. 29 U.S.C.A. § 626(d) (West 1999). In this case, Plaintiff was required to file a charge of age discrimination with the EEOC within 300 days after the alleged unlawful practice occurred. 29 U.S.C.A. § 626(d)(2). Defendants allege that Plaintiff did not file a timely charge of discrimination with the EEOC for either his demotion from Regional Sales Manager to Transmission Leader or his layoff from the Transmission Leader position.

First, with respect to the Regional Sales Manager position, Plaintiff does not dispute that he never filed a charge of discrimination with the EEOC with respect to his removal from that position. Instead, he only filed one charge of discrimination with the EEOC, which addressed only his discharge from the position of Transmission Leader. In any event, Plaintiff filed his EEOC charge in 2001, more than 300 days after Plaintiff was removed from his position as Regional Sales Manager in November 1999. At oral argument, Plaintiff's counsel admitted that Plaintiff failed to file a complaint with the EEOC concerning his

termination as Regional Sales Manager. Therefore, Plaintiff cannot maintain an ADEA claim based on his termination as Regional Sales Manager.

Second, with respect to Plaintiff's termination as Transmission Leader, the parties dispute whether the 300–day period for filing a charge with the EEOC began to run on October 24, 2000, the date Plaintiff was notified that he would be terminated, or on December 26, 2000, the date Plaintiff was in fact terminated. The parties also dispute whether Plaintiff's charge was considered filed with the EEOC on November 16, 2001, the date he filed a charge, or on September 5, 2001, the date on which Plaintiff filed an intake questionnaire with the EEOC. For Plaintiff to prevail on this issue, the Court must find both that the 300–day period did not begin to run until the day Plaintiff was actually terminated, and that the date of Plaintiff's filing of an intake questionnaire was the effective date of his charge before the EEOC.

 The statute of limitations period for an allegedly discriminatory employment decision begins at the time the employer makes the decision and communicates it to the employee. *Del. State Coll. v. Ricks*, 449 U.S. 250, 257–58, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *see also Amini v. Oberlin Coll.*, 259 F.3d 493, 499 (6th Cir.2001) ("[T]he starting date for the 300 day limitations period is when the plaintiff learns of the employment decision itself, not when the plaintiff learns that the employment decision may have been discriminatorily motivated."); *EEOC v. United Parcel Serv., Inc.*, 249 F.3d 557, 561–62 (6th Cir.2001) ("Once the employee is aware or reasonably should be aware of the employer's decision, the limitations period commences."). On October 24, 2000, Plaintiff's direct manager in Transmission and Distribution Sales, Thomas Bilia, informed Plaintiff by letter that his position

had been eliminated and that he would be "placed on layoff effective December 26, 2000 if an alternative placement opportunity cannot be identified within GE."

Plaintiff argues that because there was a possibility that an alternative placement opportunity might be found, GE's decision to terminate Plaintiff was not communicated to him until the actual date of his termination. In *Ricks*, although the plaintiff, a college professor, was not terminated until a later date, the date that he was denied tenure was the date on which the statute of limitations began to run for his claim that he was denied tenure for discriminatory reasons. 449 U.S. at 257–58, 101 S.Ct. 498. In this case, Plaintiff alleges that GE's termination of his employment was discriminatory. Although Defendant informed Plaintiff on October 24, 2000, that his position as Transmission Leader was being eliminated, Defendant's ultimate decision to terminate Plaintiff's employment was not communicated to him until he was laid off on December 26, 2000. Bilia's letter to Plaintiff on October 24, 2000, left open the possibility that GE would find another position for Plaintiff. Had GE found another position for Plaintiff, he would not have been terminated. Therefore, December 26, 2000, is the date on which the 300 day period for Plaintiff to file a charge with the EEOC began to run.

■ Plaintiff also argues that his filing of an intake questionnaire on September 5, 2001, with the EEOC served as the effective date of his filing of a charge with the EEOC. If so, his charge with the EEOC would have been timely because it would have been filed within 300 days of December 26, 2000. GE argues that Plaintiff's intake questionnaire was insufficient to serve as a complaint before the EEOC. To determine whether Plaintiff's intake questionnaire constituted a charge before,the EEOC, the Court must determine whether Plaintiff "manifested [his]

intent to activate the machinery of the [ADEA] by lodging [his] intake questionnaire with the EEOC." *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1320 (11th Cir. 2001); *Bihler v. Singer Co.*, 710 F.2d 96, 99 (3d Cir.1983) ("In order to constitute a charge that satisfies the requirement of section 626(d) [of the ADEA], notice to the EEOC must be of a kind that would convince a reasonable person that the grievant has manifested an intent to activate the Act's machinery."). In *Wilkerson*, the court found that a verified intake questionnaire was sufficient to constitute a charge before the EEOC. *Wilkerson*, 270 F.3d at 1321. The court's inquiry hinged not on the verified nature of the questionnaire, but on the fact that the questionnaire contained sufficient information to indicate that the plaintiff manifested an intent to bring a charge before the EEOC. *Id.* at 1320–21. The Court must not consider the EEOC filing requirements in a "hypertechnical manner," and may consider an unverified questionnaire as a complaint. *See Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 543 (7th Cir.1988) ("The ADEA is remedial legislation that the courts have refused to construe in a 'hypertechnical manner' so as to defeat the Act's legislative purpose."); *Casavantes v. Cal. State Univ., Sacramento*, 732 F.2d 1441, 1443 (9th Cir.1984) (construing an unverified intake questionnaire as a complaint in light of the "liberality to be applied to the procedural requirements" of Title VII).

In this case, Plaintiff manifested his intent to file a complaint before the EEOC when he filed an intake questionnaire with the EEOC on September 5, 2001. In response to Plaintiff's filing of his questionnaire, the EEOC sent Plaintiff a letter informing him that "[i]t is EEOC's policy to dismiss immediately and issue a Notice of Right to Sue to Charging Parties who file charges of discrimination wherein a lawsuit has been filed which addresses the

same issues as does the charge of discrimination filed with the EEOC." That letter did not inform Plaintiff that he needed to take additional action in order to preserve his right to sue. Rather, the letter concluded by stating that if Plaintiff did not respond, the EEOC would "assume you are no longer interested in filing a charge of discrimination." Even if the EEOC did not consider Plaintiff's questionnaire as an official charge, the EEOC clearly interpreted Plaintiff's letter as a manifestation of his intent to bring a charge of discrimination against GE.

Therefore, as of September 5, 2001, Plaintiff had satisfied the requirement of 29 U.S.C.A. § 626(d) that required him to file a charge of discrimination with the EEOC. Because this date was within 300 days of his termination from GE, Plaintiff's ADEA claim based on his termination from the Transmission Leader position is not barred by the ADEA's procedural requirements.

## 2. Statute of Limitations for State Age Discrimination Claims

■ Plaintiff's state age discrimination claims are subject to a 180–day statute of limitations, which began to run on the day that Plaintiff was in fact terminated. *See Oker v. Ameritech Corp.*, 729 N.E.2d 1177, 1178–79 (Ohio 2000). Plaintiff was terminated from his Transmission Leader position on December 26, 2000, and he filed his Complaint on June 25, 2001. June 25, 2001, was the 181st day after Plaintiff was terminated. Because June 24, 2001, was a Sunday, however, the Court finds that Plaintiff's filing on June 25, 2001, was timely with respect to his termination from the Transmission Leader position. *See* Fed.R.Civ.P. 6(a); Ohio R. Civ. Proc. 6(a).

■ The Court finds, however, that Plaintiff's state age discrimination claims are barred with respect to his removal from the Regional Sales Manager position on November 11, 1999. Plaintiff does not address this issue in his Memorandum in Opposition. His termination from the Regional Sales Manager position may serve as evidence in support of his claim of discrimination with respect to the elimination of his Transmission Leader position, but his removal from the Regional Sales Manager position cannot serve as the basis for a separate age discrimination claim because Plaintiff did not file a claim within 180 days of his removal from that position. At oral argument, Plaintiff's counsel argued that under *Oker,* the statute of limitations period for Plaintiff's claim based on his termination from the Regional Sales Manager Position did not begin to run until he was terminated altogether in 2000.

The plaintiff in *Oker,* an Ameritech in-house lawyer, sought a position with the company's reorganized legal department. *Oker,* 729 N.E.2d at 1178. On November 9, 1994, Ameritech informed the plaintiff that his application had been denied. *Id.* The plaintiff was ultimately terminated from Ameritech's legal department on January 7, 1995, but he remained with Ameritech as a customer service representative until April 15, 1995, while he sought new employment. *Id.* The Ohio Supreme Court found that the statute of limitations period began to run on January 7, 1995, the day the plaintiff was terminated from the legal department, rather than on November 9, 1994, the day that Ameritech informed the plaintiff that he would be terminated. *Id.* at 1180. But although the plaintiff in fact continued with the company as a customer service representative until April 15, 1995, the court did not find that April 15, 1995, was the day the statute of limitations period began to run. *Id.* Instead, the period began to run on the day the plaintiff was terminated from his legal department position. *Id.*

In this case, Plaintiff was terminated from his position as Regional Sales Manag-

er on November 11, 1999. Plaintiff filed his Complaint in this case on June 25, 2001, well over 180 days from November 11, 1999. Just as in *Oker*, the fact that Plaintiff continued in a different position at GE does not extend the statute of limitations period. Although the statute of limitations period does not begin to run until the date that Plaintiff was terminated, he was terminated from the Regional Sales Manager position effective November 11, 1999. Therefore, Plaintiff's state age discrimination claim based on his termination from the Regional Sales Manager Position is barred by the 180-day statute of limitations.

Therefore, based on all the relevant time bars, the Court **GRANTS** Defendants' Motion for Summary Judgment with respect to Plaintiff's ADEA and state claims regarding his termination as a Regional Sales Manager in November 1999. The Court will now consider the merits of Plaintiff's ADEA and state age discrimination claims based on his termination from the Transmission Leader position in December 2000.

### B. Plaintiff's Termination from Transmission Leader Position

Plaintiff brings age discrimination claims against Defendants based on the ADEA, 29 U.S.C.A. §§ 621–634 (West 2003), and Ohio's employment discrimination laws, Ohio Rev.Code Ann. §§ 4112.01, 4112.02, 4112.99 (West 2003). Based on the time bars discussed above, Plaintiff's only remaining claims are those based on the elimination of his position as a Transmission Leader. The Court may rely on cases interpreting the ADEA in its analysis of Plaintiff's state law claim. *See City of Columbus Civil Serv. Comm'n v. McGlone*, 82 Ohio St.3d 569, 697 N.E.2d 204, 206–07 (1998); *Cochran v. Columbia Gas of Ohio, Inc.*, 138 Ohio App.3d 888, 742 N.E.2d 734, 738 (2000) ("[W]hen intep-

reting [Ohio Revised Code] chapter 4112, it is appropriate to look at analogous federal statutes and case law.").

Plaintiff does not present any direct evidence that GE terminated his employment for discriminatory reasons. Therefore, the Court will analyze Plaintiff's age discrimination claims according to the *McDonnell Douglas* burden shifting analysis. *See Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538 (6th Cir.2002); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, Plaintiff must present evidence of a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If Plaintiff succeeds in demonstrating a *prima facie* case of discrimination, the burden shifts to Defendant to produce evidence of a legitimate, nondiscriminatory reason for taking the action that Plaintiff alleges was discriminatory. *Id.* at 802–03, 93 S.Ct. 1817. Finally, if Defendant states a legitimate, nondiscriminatory reason for taking the action it did, the burden shifts back to Plaintiff to produce evidence that Defendant's reason was a mere pretext for discrimination. *Id.* at 804–05, 93 S.Ct. 1817.

▮ The Court must first determine whether Plaintiff is able to establish a *prima facie* case of age discrimination. The four elements of a *prima facie* age discrimination case are as follows: "(1) that [Plaintiff] was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class." *Byrnes v. LCI Communication Holdings Co.*, 77 Ohio St.3d 125, 672 N.E.2d 145, 148 (1996) (listing elements of *prima facie* age discrimination case based on Ohio law) (quoting *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146, 451 N.E.2d

807 (1983)); *see also Policastro,* 297 F.3d at 538 (listing elements of ADEA *prima facie* case).[2] The protected class under the ADEA and Ohio's age discrimination statute includes all persons at least forty years of age. 29 U.S.C.A. § 631(a) (West 2003); Ohio Rev.Code Ann. § 4112.14(A) (West 2003).

 Defendants contend, and Plaintiff does not dispute, that the elimination of Plaintiff's position as a Transmission Leader was part of a reduction in force. When an employee is terminated as part of a reduction in force ("RIF"), his duty to present a *prima facie* case is somewhat heightened. *Wilson v. Firestone Tire & Rubber Co.,* 932 F.2d 510, 517 (6th Cir. 1991) (citing *Ridenour v. Lawson Co.,* 791 F.2d 52, 57 (6th Cir.1986)); *see also Williams v. Emco Maier Corp.,* 212 F.Supp.2d 780, 783–84 (S.D.Ohio 2002). In RIF cases, the terminated employee must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp Inc.,* 896 F.2d 1457, 1465 (6th Cir.1990).

Plaintiff does not dispute that his termination was part of a RIF, and Defendants do not contest the traditional elements of Plaintiff's *prima facie* case. Rather, Defendants only argue that Plaintiff has failed to satisfy his heightened burden of presenting additional evidence that GE singled him out for discharge because of his age. Even if Plaintiff is able to state a *prima facie* case of age discrimination, Defendants contend that their reduction in force was a legitimate, nondiscriminatory reason for Plaintiff's termination. Defendants then argue that Plaintiff has failed

to present evidence that the RIF was merely a pretext for age discrimination. The Court will combine the inquiry of whether Plaintiff has met the heightened RIF *prima facie* case requirement and whether GE's RIF was a mere pretext for discrimination because these are essentially the same inquiries. *See Williams,* 212 F.Supp.2d at 785–86.

 To meet the heightened *prima facie* requirement in a RIF case, a plaintiff need not present direct evidence of discrimination, but must present evidence "sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." *Barnes,* 896 F.2d at 1466. For example, Plaintiff in this case could present evidence that he was more qualified than the younger workers GE did not terminate. *See id.* Likewise, Plaintiff need not present direct evidence of discrimination to prove that GE's stated reason for terminating him was pretextual; instead, Plaintiff must present evidence sufficient that a jury could conclude that GE's stated reason for failing to promote him was not its real reason. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ("[A] *prima facie* case and sufficient evidence to reject the employer's explanation may permit a finding of liability. . . ."); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("[R]ejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination."). To demonstrate that Defendants' proffered reason for discharge was pretextual, Plaintiff must "show by a

---

**2.** Under the ADEA, the fourth element requires only that the plaintiff be replaced by someone "substantially younger than the plaintiff" even if that replacement is a member of the protected class. *O'Connor v. Con-* *sol. Coin Caterers Corp.,* 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). This distinction is not relevant in this case because Plaintiff was not replaced after he was terminated from the Transmission Leader position.

preponderance of the evidence either (1) that the proffered reasons had no basis *in fact,* (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994) (quoting *McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 513 (7th Cir.1993)).

██ Plaintiff contends that he has sufficient additional evidence that he was singled out for termination due to his age because all seven of those employees terminated during GE's RIF were 40 years of age or older. Furthermore, five of the seven had over 20 years of experience with GE and four of the seven were over 55 years of age. Defendant counters that these statistics are insufficient to demonstrate that Plaintiff was singled out for termination because the sample size of seven employees is too small for statistical analysis. Defendant also notes that Plaintiff fails to present any evidence comparing those employees who were terminated with those employees who were not terminated. *See Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 944 (6th Cir.1987) (noting that statistical evidence can only demonstrate discrimination if there is a proper point of comparison). Indeed, the mere fact that all of the terminated employees were over 40 years of age and that four of them were over 55 years of age does little to demonstrate that Plaintiff was singled out for termination based on his age. This argument is akin to arguing that Plaintiff must have been singled out for termination because he was 56 years old when selected for termination. Such an argument merely begs the question of whether there is any additional evidence to demonstrate that Plaintiff was singled out for termination. The statistics Plaintiff presents do not answer this question.

██ Plaintiff further contends that GE's RIF and use of a forced matrix was

pretext for age discrimination and that he was singled out for termination based on his age because the factors Bilia considered on his forced matrix predetermined Plaintiff for termination. For example, Plaintiff contends that Bilia should not have used subjective factors for evaluating employees, that emphasizing seniority in the position predisposed Plaintiff to the lowest ranking, that sales performance was not considered to Plaintiff's detriment, and that Bilia failed to consider any of Plaintiff's previous work reviews.

Although use of a subjective evaluative matrix does not necessarily indicate discrimination, *Brown v. EG & G Mound Applied Tech., Inc.,* 117 F.Supp.2d 671, 680 (S.D.Ohio 2000), the factors Bilia considered on his matrix predisposed Plaintiff for termination. Therefore, Plaintiff has presented evidence upon which a reasonable jury could conclude that GE discriminated against him based on his age. Bilia's matrix evaluation system placed a heavy emphasis on seniority in the Transmission Leader position, but gave no weight to Plaintiff's overall seniority with GE. Such a system predisposes older employees to unfair treatment if they have recently been transferred to a new position. GE knew that it had terminated Plaintiff from the higher-ranking Regional Sales Manager position less than a year before its reduction in force necessitated termination of one of Bilia's Transmission Leaders.

A reasonable jury could conclude that GE acted irrationally when it failed to consider Plaintiff's overall tenure with the company and focused instead on his short tenure in a position to which GE had recently demoted him. Although Plaintiff's claims based on his termination as a Regional Sales Manager are time barred, a jury could consider the circumstances surrounding that termination in determining whether GE discriminated against Plaintiff

when he was ultimately laid off from the Transmission Leader position. When Plaintiff was terminated from the Regional Sales Manager position, he was replaced by a substantially younger employee who lacked Plaintiff's experience and education. A reasonable jury could conclude that transferring Plaintiff to the Transmission Leader position and then laying him off within a year was part of an overall scheme to terminate Plaintiff based on his age.

A reasonable jury could also find that GE acted irrationally when it failed to consider Plaintiff's successful sales record as a Transmission Leader during the year before he was terminated. Plaintiff had the best sales record among Bilia's Transmission Leaders. Bilia testified that he did not consider sales as one of the best indicators of a Transmission Leader's performance, but a reasonable jury could find this testimony unpersuasive. Furthermore, although Bilia considered primarily subjective factors in ranking his Transmission Leaders, he failed to review Plaintiff's previous reviews from his other years at GE. At the time of the RIF, Plaintiff had worked for Bilia for less than a year. A reasonable jury could conclude that Bilia rationally should have considered Plaintiff's previous performance. Bilia was naturally more familiar with the work of the other two Transmission Leaders who had worked for him for a longer period of time, which may have predisposed those two employees to receiving higher subjective ratings from Bilia.

Indeed, had Bilia chosen to terminate Plaintiff simply because he preferred the other two Transmission Leaders who had more experience working for him, that decision would not have necessarily indicated age discrimination. But GE's use of a complex matrix evaluation system raises questions about GE's intentions. A reasonable jury could conclude that GE trans-

ferred Plaintiff to the Transmission Leader position and then terminated him at the first possible opportunity based solely on his lack of seniority in the new position to which GE had assigned him. The fact that Plaintiff scored lowest on Bilia's matrix evaluation may have provided GE with a nondiscriminatory reason to terminate Plaintiff, but Plaintiff has presented sufficient evidence upon which a reasonable jury could conclude that he was singled out for termination based on his age and that the use of the matrix was pretext for age discrimination. *See Reeves*, 530 U.S. at 147, 120 S.Ct. 2097 ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.").

Therefore, the Court **DENIES** Defendants' Motion for Summary Judgment with respect to Plaintiff's ADEA and state age discrimination claims based on GE's elimination of his position as a Transmission Leader.

## C. Age Discrimination Claims Against Individual Defendants

Plaintiff brings state age discrimination claims against individual Defendants Coleman, Woodruff, and Trotter. Under Ohio Revised Code chapter 4112, individual supervisors and managers can be held liable for employment discrimination. *Genaro v. Cent. Transp., Inc.*, 84 Ohio St.3d 293, 703 N.E.2d 782, 787–88 (1999). Defendant Coleman was Plaintiff's direct supervisor for his Regional Sales Manager position. Defendant Woodruff was Defendant Coleman's direct manager in GE's Power Management Division, while Defendant Trotter was the president and CEO of the entire Industrial Systems Division, which included both the Power Management Division and the Transmission and Distribution Sales Division.

Plaintiff's state age discrimination claim based on his termination from the Regional Sales Manager position is barred by the statute of limitations. *See supra* section V.A.2. Therefore, his claims against Defendants Coleman and Woodruff are barred by the statute of limitations because those claims are based on Plaintiff's termination from the Regional Sales Manager Position.

 As the president and CEO of the entire Industrial Systems Division, however, Defendant Trotter could potentially be liable for Plaintiff's ultimate termination from the Transmission Leader position. Individual liability under Ohio Revised Code chapter 4112 extends only to an individual's own actions, and therefore, only to direct supervisors or supervisors who played a direct role in making an employment decision. *See Genaro,* 703 N.E.2d at 787 ("[I]ndividual supervisors and managers are accountable for their *own* discriminatory conduct occurring in the workplace environment.") (emphasis added); *see also Brown v. Worthington Steel, Inc.,* 211 F.R.D. 320, 327 (S.D.Ohio 2002) (finding that under *Genaro,* "only the 'decision maker' of the adverse employment action is liable") (quoting *Jones v. Kilbourne Med. Labs.,* 162 F.Supp.2d 813, 830 (S.D.Ohio 2000)). Plaintiff has presented no evidence that Defendant Trotter played any role in deciding to eliminate his position as a Transmission Leader. All evidence suggests that Bilia made the decision perhaps at the direction of his direct supervisors, but not at the direction of Defendant Trotter. Therefore, Defendants' Motion for Summary Judgment with respect to Plaintiff's claims for supervisory liability against the individual Defendants Coleman, Woodruff, and Trotter is **GRANTED.**

### VI. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is **DE-NIED** with respect to Plaintiff's ADEA and state age discrimination claims based on GE's termination of Plaintiff's position as a Transmission Leader and **GRANTED** in all other respects. Furthermore, Plaintiff's disability discrimination claims are hereby **DISMISSED** with prejudice.

**IT IS SO ORDERED.**