OPINION
{¶ 1} Plaintiff-appellant, Vera F. Hoffman, appeals from a summary judgment rendered in favor of defendants-appellees, CHSHO, Inc., d.b.a. Carington Health Systems ("Carington"), and CHS Eastern Region, Inc., d.b.a. Clermont Nursing Convalescent Center ("CNCC"), with respect to appellant's age discrimination claim.
 {¶ 2} Appellant is a registered nurse. In 1979, she began working as a floor nurse or "charge nurse" at CNCC. She was 37 years old. In 1987, appellant was promoted to the position of staff development director, where her duties included administering CNCC's nurse aide training program. In 1999, Carington obtained the license to operate CNCC. In that same year, CNCC lost its state certification to operate a nurse aide training program, but appellant continued to perform her remaining duties as staff development director.
 {¶ 3} In August 2000, CNCC asked appellant to move from the position of staff development director to the position of nurse aide scheduler. Appellant agreed to the move. Shortly thereafter, CNCC hired Stephanie Connor, age 26, to assume the majority of appellant's duties as staff development director. Later, Connor was assigned to be CNCC's nurse scheduler.
 {¶ 4} In May 2001, CNCC's census began to decline, and the facility began operating at a loss. By December 2001, CNCC was operating at only 80 percent of capacity. In the fall of 2001, Carington's management consultant, Roger King, determined that CNCC was overstaffed and recommended that a number of positions be eliminated at CNCC, including the position of nurse aide scheduler. King believed that the nurse aide scheduler position needed to be eliminated because CNCC was overpaying a nurse to perform what was essentially a clerical function.
 {¶ 5} On December 11, 2001, King directed Sharon Wilburn — who, as one of Carington's regional directors of management operations, was in charge of CNCC — to eliminate the nurse aide scheduler position. Wilburn then met with CNCC's administrator, John Hoenemeyer, and discussed with him the need to reduce CNCC's staff. Wilburn asked Hoenemeyer if he thought he "really need[ed] two schedulers," and he replied that he did not. When Wilburn asked Hoenemeyer which of the two schedulers at CNCC, appellant or Connor, he would choose to terminate, he told her that he would choose to terminate appellant.
 {¶ 6} On January 11, 2002, Hoenemeyer called appellant into his office and told her that her position was being eliminated. He also told her that the decision had nothing to do with her performance. He offered to allow her to stay at CNCC as a charge nurse. After appellant's termination, Connor moved into appellant's office and began assuming her responsibilities; Connor told one of her coworkers at CNCC that she was taking over appellant's position.
 {¶ 7} Appellant refused the offer of the charge nurse position. In June 2002, she brought suit against CNCC and Carington (hereinafter referred to collectively as appellees) alleging violations of R.C. 4112.02 and public policy. She later amended her complaint to include an allegation that her discharge violated the Age Discrimination in Employment Act ("ADEA"), contained in Section 621 et seq., Title 29, U.S. Code.
 {¶ 8} On October 31, 2003, appellees moved for summary judgment on appellant's claim. On August 25, 2004, the trial court granted appellees' motion for summary judgment after it found that appellant had failed to establish a prima facie case of age discrimination, and that even if she did establish such a case, appellees rebutted it by producing evidence of a reduction in force. The trial court further found that appellant had failed to show that the reduction in force was a pretext for discrimination, or that appellees were motivated by a discriminatory purpose in eliminating appellant's job. The trial court also rejected appellant's public policy claim.[1]
 {¶ 9} Appellant now appeals, raising the following assignments of error:
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "The trial court erred to the prejudice of plaintiffa-ppellant in failing to find there was a prima facie case of age bias."
 {¶ 12} Assignment of Error No. 2:
 {¶ 13} "The trial court erred to the prejudice of plaintiff in finding there was no evidence that defendants' unusual incredible explanation for its retention of the younger, less qualified Stephanie Connor, age 26, was pretextual."
 {¶ 14} Assignment of Error No. 3:
 {¶ 15} "The trial court erred to the prejudice of plaintiff-appellant deciding numerous hotly contested issues of fact which should be left to the jury."
 {¶ 16} Assignment of Error No. 4:
 {¶ 17} "The trial court erred to the prejudice of plaintiff-appellant in deciding for itself the employer's motive and granting summary judgment."
 {¶ 18} Appellant's assignments of error are interrelated and, therefore, we shall address them jointly. Essentially, appellant argues that the trial court erred in granting summary judgment to appellees with respect to her age discrimination claim. For the reasons that follow, we agree with this argument.
 {¶ 19} A court may grant a moving party summary judgment if no genuine issue of material fact remains to be litigated; the moving party is entitled to judgment as a matter of law; and the evidence, when viewed in a light most favorable to the nonmoving party, demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. It is imperative for a reviewing court to examine the evidence, and all reasonable inferences that can be drawn from it, in a light most favorable to the nonmoving party.Hannah v. Dayton Power Light Co., 82 Ohio St.3d 482, 485,1998-Ohio-408.
 {¶ 20} Under the ADEA and R.C. 4112.02, it is unlawful for an employer to discharge or otherwise discriminate against an employee because of his or her age. Section 623(a), Title 29, U.S.Code; R.C. 4112.02(A). In order to prevail on an age discrimination claim brought pursuant to the ADEA or R.C.4112.02, a plaintiff must present evidence of a prima facie case of age discrimination. See Williams v. General Electric Co.
(2003), 269 F.Supp.2d 958, 966, citing McDonnell Douglas Corp.v. Green (1973), 411 U.S. 792, 802-805, 93 S.Ct. 1817. If the plaintiff succeeds in doing so, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for taking the adverse employment action against the plaintiff. Williams, citing McDonnell Douglas Corp. v. Green.
If the defendant produces such evidence, the burden shifts back to the plaintiff to produce evidence that defendant's reason was a mere pretext for discrimination. Williams, citing McDonnellDouglas Corp. v. Green.
 {¶ 21} To establish a prima facie case of age discrimination under the ADEA or Ohio law, a plaintiff must show that he or she: (1) was a member of a statutorily-protected class; (2) was discharged; (3) was qualified for the position; and (4) was replaced by, or his or her discharge permitted the retention of, a person not belonging to the protected class. Williams,269 F.Supp.2d at 966, citing Byrnes v. LCI Communication HoldingsCo., 77 Ohio St.3d 125, 1996-Ohio-307, and Policastro v.Northwest Airlines, Inc. (C.A.6, 2002), 297 F.3d 535, 538. The "statutorily-protected class" includes all persons, age 40 or older. See ADEA, Section 631(a), Title 29, U.S. Code, and R.C.4112.14(A).
 {¶ 22} When an employee is terminated as part of a reduction in force ("RIF"), the employee's duty to present a prima facie case is "somewhat heightened." Williams, 269 F.Supp.2d at 967, citing, among others, Wilson v. Firestone Tire Rubber Co.
(C.A.6, 1991), 932 F.2d 510, 517. "In RIF cases, the terminated employee must present `additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" Williams, quoting Barnes v. GenCorp. Inc. (C.A.6, 1990), 896 F.2d 1457, 1465.
 {¶ 23} In this case, appellant acknowledges that her termination was part of a RIF, and appellees acknowledge that appellant established the first three elements of a prima facie case of age discrimination. The evidence demonstrates that appellant (1) was 60 years old at the time of her discharge and thus was a member of a statutorily protected class; (2) was terminated from her position as nurse aide scheduler; and (3) was qualified for that position. The fourth element of a prima facie case was also established since the evidence showed that appellant's discharge permitted appellees to retain an employee, Connor, who, at age 27, was not a member of a statutorily-protected class.
 {¶ 24} Furthermore, appellant presented sufficient evidence to meet the "somewhat heightened" prima facie requirement in RIF cases. In order to meet this requirement, a plaintiff "must present evidence `sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age.'" Williams, 269 F.Supp.2d at 967, quoting Barnes, 896 F.2d at 1466. A plaintiff can meet this requirement by showing that he or she was more qualified than the younger worker who replaced them, or who was otherwise retained by the employer. See Williams, citing Barnes.
 {¶ 25} Here, the evidence showed that appellant's professional experience dwarfed that of Connor; thus, a reasonable jury could have inferred that appellant was more qualified for the position. At the time appellant was discharged from her position, she had more than 30 years of nursing experience, while Connor had only four. Appellant had worked at CNCC for 23 years, while Connor had worked there for only one and one-half years. Appellant had worked as a staff development director for 13 years, while Connor had worked in that position for less than one year. And appellant had conducted nurse aide training programs for 11 years, while Connor had little or no experience in conducting such programs.
 {¶ 26} The foregoing demonstrates that, despite the trial court's finding to the contrary, appellant established a prima facie case of age discrimination. As a result, appellees were obligated to present evidence of a legitimate nondiscriminatory reason for terminating appellant. Williams,269 F.Supp.2d at 966. Once appellees presented such a reason, appellant was obligated to show that the reason was a mere pretext for age discrimination. Id. To demonstrate that appellees' proffered reasons for appellant's discharge were simply a pretext, appellant was required to "show by a preponderance of the evidence either (1) that the proffered reasons had no basis infact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." (Emphasis sic.) Williams, 269 F.Supp.2d at 967-968, quoting Manzer v. Diamond Shamrock Chems. Co. (C.A.6, 1994),29 F.3d 1078, 1084.
 {¶ 27} Appellees argue that the decision to eliminate appellant's position was a legitimate business decision that was based on economic necessity, not on appellant's age. In support of this argument, they point out that at the time appellant was discharged, CNCC was running at only 80 percent capacity and was losing money, and there was evidence presented that showed CNCC posted a one million dollar loss in 2001.
 {¶ 28} However, while the evidence shows that appellees had significant financial problems and therefore needed to reduce staff, this reason fails to account for why they singled out appellant, approximately age 60, for termination, while they chose to retain Connor, approximately age 26. See Woodhouse v.Magnolia Hosp. (C.A. 5, 1996), 92 F.3d 248, 253("what is suspicious in reduction-in-force cases is that the employer fired a qualified, older employee but retained younger ones.") In these circumstances, an employer is required to articulate reasons for singling out an employee who is within the statutorily-protected class for termination, while retaining a younger employee who is outside that class. Id.
 {¶ 29} Appellees contend that appellant was terminated merely as a result of a recommendation to terminate her position, which made by its management consultant, King, who based his recommendation on the belief that it was unwise to have a skilled nurse perform what was essentially a clerical task. Appellees maintain that this recommendation to eliminate the position of nurse aide scheduler was passed on to one of its regional directors, Wilburn, in the form of a "directive" to eliminate the position, and that Wilburn then instructed CNCC's administrator, Hoenemeyer, "to take the action as part of a reduction in force." Appellees assert that this provided a legitimate business justification for appellant's termination and urges this court not to second-guess it.
 {¶ 30} However, a review of the deposition testimony of King, Wilburn and Hoenemeyer demonstrates that there are at least two genuine issues of material fact remaining in this case: (1) who
was actually responsible for appellant's termination — King or Hoenemeyer?, and (2) was appellant terminated as a result of the nurse aide scheduler position being eliminated, or because appellees considered her, as opposed to Connor, less desirable to retain?
 {¶ 31} King testified in his deposition that he "directed" Wilburn to eliminate the nurse aide scheduler position, after he determined that it was unwise to have a skilled nurse perform what was essentially a clerical task. However, Wilburn acknowledged in her deposition that she did not actually relay this directive to Hoenemeyer. Instead, she merely asked Hoenemeyer if he really needed two schedulers. Wilburn attributed her decision to ask Hoenemeyer if he really needed two schedulers, rather than simply order Hoenemeyer to terminate the position of nurse aide scheduler, to her "participatory management style."
 {¶ 32} Irrespective of Wilburn's reasons for framing the question to Hoenemeyer as she did, Hoenemeyer viewed Wilburn's question as a request that he terminate either appellant or Connor, with the retained employee assuming the responsibilities of the terminated employee. Hoenemeyer viewed the decision regarding which of the two schedulers to terminate as being his decision alone; indeed, when he was asked at his deposition who made the decision to terminate appellant, Hoenemeyer replied, "I ultimately made that decision."
 {¶ 33} Therefore, while there is evidence to support the view that appellant was terminated merely as a result of appellees' decision to eliminate the nurse aide scheduler position, irrespective of who held that position, there is also evidence to support the view that appellant was terminated as a result of Hoenemeyer's choice between eliminating appellant, age 60, or Connor, age 27, as one of CNCC's two schedulers. It is therefore imperative that we examine Hoenemeyer's reasons for choosing to terminate appellant rather than Connor to determine if a genuine issue of material fact remains regarding whether Hoenemeyer chose to terminate appellant for permissible or impermissible reasons.
 {¶ 34} When Hoenemeyer was asked why he chose to discharge appellant rather than Connor, he initially stated, "I chose Vera [appellant] because in my best judgment Vera was a person that could leave that position and go to a charge nurse position." However, this reason is insufficient since it appears that Connor could also have gone to a charge nurse position. It therefore provides no legitimate basis for choosing appellant over Connor when deciding which of the two schedulers at CNCC to terminate.
 {¶ 35} Hoenemeyer next stated that he chose appellant for termination because it was difficult for him to believe that she could handle the added responsibilities she would have had to assume if he had chosen to retain her rather than Connor. However, this, too, provides an inadequate explanation for his decision. Irrespective of who was going to be retained, that person would have to accept additional responsibilities.
 {¶ 36} Hoenemeyer also said that it was his experience that the person who handled more responsibilities was more likely to be better able to handle additional responsibilities, and that Connor was the person who had more responsibilities. While it is logical to assume that a person who handles more responsibilities will be better able to handle increased responsibilities than a person who handles fewer ones, this reason is insufficient to demonstrate the absence of a genuine issue of material fact on the question of whether Hoenemeyer's reasons for choosing to terminate appellant rather than Connor were a mere pretext for discrimination. This is particularly true in light of the wide disparity between appellant's experience and that of Connor's.
 {¶ 37} Generally, questions of an employer's motive and intent in discharging an employee are not susceptible to resolution in summary judgment proceedings, see, e.g., Ross v.Campbell Soup Co. (C.A.6, 2001), 237 F.3d 701, 706, and we find this case to be no exception. In light of the foregoing, we conclude that appellant presented sufficient evidence to allow a reasonable jury to find by a preponderance of the evidence that Hoenemeyer's proffered reasons for her discharge were a mere pretext, since the proffered reasons did not actually motivate her discharge or were insufficient to motivate her discharge.Williams, 269 F.Supp.2d at 967-968, quoting Manzer,29 F.3d at 1084.
 {¶ 38} Consequently, the trial court erred in granting summary judgment to appellees on appellant's age discrimination claim. Appellant's assignments of error are sustained.
 {¶ 39} The trial court's judgment is reversed, and this cause is remanded to the trial court for further proceedings according to law and consistent with this opinion.
Walsh, P.J., and Bressler, J., concur.
[1] Appellant alleges in a footnote to the "Statement of the Case" in her appellate brief that the trial court erred by holding that appellees' actions did not violate public policy, but she did not raise this issue in an assignment of error. Accordingly, this issue is not properly before us on appeal. See App.R. 16.